

**To:** Beatrice, Teller ID #4916
8742 Lucent Blvd., Suite 300, Highlands Ranch, CO 80129
www.SLS.net
[Specialized Loan Servicing LLC NMLS ID 2168]
*and*
CEO, SPECIALIZED LOAN SERVICING Toby Wells
Specialized Loan Servicing LLC P.O. Box 630147 Littleton, CO 80163-0147
https://www.computershareloanservices.com/us/about-us/our-management-team

**From:** Felicia's Estate
**Ex Rel:** FELICIA SANDERS

**In Re:** "Intent to Foreclose" and alleged "Loan No.: 101262681"
**Date:** 12/23/2018

## Affidavit of Fact and Writ of Discovery

Dear Beatrice,

We have received your correspondence of 12/12/2018 in regards to our request sent to Maggie Pitts-Dilley on the 8th day of September 2018 sent via United States Postal Service certified mail [No: 7016 1370 0000 7645 2515], partially answered.

We must have full disclosure in order to proceed honorably. We have entitled each page of the packet sent by you "Exhibit A" to Exhibit A40" and will be attaching all referenced documents to this affidavit.

A request for certified documents was made and only copies were received, these documents are accepted for value and deemed a dishonor. The reason that certified copies were requested is to ensure that you and or your agency are in fact and in law the holder in due course entitled to enforce any demands and collect any promises or debts in said documents. A copy of any document(s) can be obtained from the public record by anyone and in order to ensure that you and or your agency have no criminal intent to defraud me out of any monetary or financial assets, house, home, permanent domicile, land, estate and the appurtenances thereon, I demanded that the documents sent to me, my estate, heirs, successors, assignors, beneficiaries, attorneys, next of kin etc. be certified in good faith and credit.

**Exhibit A23** is not a certified copy with a wet ink signature and is not sufficient evidence to prove that you and or your agency is / are the holder in due course. Although the request for certified documents was not honored, we will be addressing the documents sent via mail in honor of Felicia's Estate, property, land and the appurtenances thereon.

In our request sent on the 8th day of September 2018 we demanded that the holder in due course clarify which laws, if applicable governed or applied to the alleged loan and documents associated therewith. Based on several pages of the packet sent to us it is clear that Federal Law, State Law, the Common Law, the Law of Equity and Res Judicata / Judicial opinions are governing the documents, Security Instrument, Promissory Note and Loan.

See: **Exhibit A3;**

**Exhibit A9** letter **(H)** **"Applicable Law"** – *means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions*; and letter **(O);**

**Exhibit A18** enumerated paragraph **16 "Governing Law; Severability; Rules of Construction.** *This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in*

*this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision*;

**Exhibit A20** enumerated paragraph **22 Acceleration; Remedies.** *Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this section 22, including. But not limited to, reasonable attorneys' fees and cost of title evidence*;

**Exhibit A24;** and **Exhibit A28.**

Additionally, your documents fail to prove that a request for lawful money as payment has been made or that any lawful money has ever been transferred as a loan to any account in my name or to any other alleged Borrower whose name is listed or apparent on said documents.

Based on the Exhibits listed below, it is prima facia evidence that United States Dollars (USD) / Federal Reserve Notes (FRN's) are being requested as payment, not lawful money, e.g. gold and silver coin.

See: **Exhibit A4** enumerated paragraph **1 "BORROWER'S PROMISE TO PAY"** – *In return for a loan that I have received, I promise to pay U.S. $221,000.00 (this amount is called *Principal*), plus interest, to the order of Lender. Lender is NEW CENTURY MORTGAGE CORPORATION;*

**Exhibit A5** enumerated paragraph **4** letter **(B);** and **Exhibit A9** letter **(D) "Note"** *means the promissory note signed by Borrower and dated February 10, 2006. The Note states the Borrower owes Lender TWO HUNDRED TWENTY-ONE THOUSAND AND 00/100 Dollars (U.S. $221,00.00) plus interest.*

Since the documents sent to us i.e. myself, my heirs, assignors, beneficiaries, successors etc. are governed by Federal Law and you or your agency are not requesting payment in lawful money, thus, there is no equitably possible way for us to pay anything. We will however make a counter offer to cure any defaults you may have with any alleged Borrowers pursuant to **Exhibit A20** enumerated paragraph **22** and **Exhibit A18** enumerated paragraph **16** stating that all rights and obligations are subject to federal and state law i.e. the United States Codes and Uniform Commercial Codes. Solely for the securitization of Felicia's ancestral Estate and to clear any alleged debts pertaining thereto, specifically and expressly related to the home with the mailing location of 44 Carr Street Providence Rhode Island 02905; Parcel (Land / estate) Identification: Plat 59 Lot 0390, are these codes, statutes and regulations mentioned: pursuant to:

1. **Rhode Island General Laws TITLE 6A Uniform Commercial Code CHAPTER 3** Negotiable Instruments ***PART 6*** *Discharge and Payment* **SECTION 6A-3-602** *Payment*;

2. **Rhode Island General Laws TITLE 6A Uniform Commercial Code CHAPTER 3** Negotiable Instruments **PART 6** *Discharge and Payment* **SECTION 6A-3-603** *Tender of Payment*;

3. **Rhode Island General Laws TITLE 6A Uniform Commercial Code CHAPTER 3** Negotiable Instruments ***PART 6*** *Discharge and Payment* **SECTION 6A-3-604** *Discharge by cancellation or renunciation.*

You and your agency will be glad to know that pursuant to **Title 12 § 411** of the United States Codes, the United States takes on all obligations of said Notes / United States Dollars (USD) / Federal Reserve Notes (FRN's) / Private Commercial Paper (Fiat) used and promised as payment and they are to be contacted to cure any defaults you may be experiencing from any of your Borrowers as a public due considering there is no other equitable way for anyone to pay any debts in lawful money.

> **U.S. Code** › **Title 12** BANKS AND BANKING › **Chapter 3** FEDERAL RESERVE SYSTEM › **Subchapter XII** FEDERAL RESERVE NOTES › **§ 411** - ***Issuance to reserve banks; nature of obligation; redemption.*** *Federal reserve notes, to be issued at the discretion of the Board of Governors of the Federal Reserve System for the purpose of making advances to Federal reserve banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are authorized. The said notes shall be obligations of the United States and shall be receivable by all national and member banks and Federal reserve banks and for all taxes, customs, and other public dues. They shall be redeemed in lawful money on demand at the Treasury Department of the United States, in the city of Washington, District of Columbia, or at any Federal Reserve bank.*
>
> (Dec. 23, 1913, ch. 6, § 16 (par.), 38 Stat. 265; Jan. 30, 1934, ch. 6, § 2(b)(1), 48 Stat. 337; Aug. 23, 1935, ch. 614, title II, § 203(a), 49 Stat. 704.)

**Board of Governors Contact**

https://www.federalreserve.gov/
20th Street and Constitution Avenue N.W., Washington, DC 20551

**Main Telephone/TDD**
For other inquiries, or to speak with an operator: 202-452-3000

**Telecommunications Device for the Deaf (TDD) Line**
For TDD access: 202-263-4869

The seven members of the Board of Governors of the Federal Reserve System are nominated by the President and confirmed by the Senate. A full term is fourteen years. One term begins every two years, on February 1 of even-numbered years. A member who serves a full term may not be reappointed. A member who completes an unexpired portion of a term may be reappointed. All terms end on their statutory date regardless of the date on which the member is sworn into office.

The Chairman and the Vice Chairman of the Board are named by the President from among the members and are confirmed by the Senate. They serve a term of four years. A member's term on the Board is not affected by his or her status as Chairman or Vice Chairman.

## *Board Member Assignments - Board Committees*

**Committee on Board Affairs**
Chairman Powell, Chairman

**Committee on Consumer and Community Affairs**
Governor Brainard, Chair

**Committee on Financial Stability**
Governor Brainard, Chair
Vice Chairman for Supervision Quarles

**Committee on Federal Reserve Bank Affairs**

Governor Brainard, Chair

**Committee on Supervision and Regulation**
Vice Chairman for Supervision Quarles, Chairman
Governor Brainard

**Subcommittee on Smaller Regional and Community Banking**
Governor Brainard, Chair

**Committee on Payments, Clearing, and Settlement**
Governor Brainard, Chair
Vice Chairman for Supervision Quarles

Any and all further correspondences in relation to this matter are to be addressed to my Successor and Heir, Jamhal Talib Abdullah Bey.

[Additional consideration: Uniform Commercial Code - **§ 1-103.** *Construction of Uniform Commercial Code to Promote its Purposes and Policies: Applicability of Supplemental Principles of Law.*; **§ 1-301.** *Territorial Applicability; Parties' Power to Choose Applicable Law.*; **§ 1-202.** *Notice; Knowledge.*; **§ 1-105.** *Severability.*; **§ 1-308.** *Performance or Acceptance Under Reservation of Rights.*; **§ 3-502.** *DISHONOR.*]

Respectfully sent, executed by my hand and seal on this 23rd day of December in the year 2018.

I am: Felicia Sanders
Ex Rel: FELICIA SANDERS. Representative of 'Felicia's Estate'.
All Rights Reserved.

Heir and Successor: Jamhal Talib Abdullah Bey
All Rights Reserved.

Countersigner & Witness: Julisa Amurica Adonay El
All Rights Reserved.

Countersigner & Witness: Shakur Bey
All Rights Reserved.

Countersigner & Witness: [illegible] Bey
All Rights Reserved.

Countersigner & Witness: Janaya Rasha Adla Awa Nymeria El
All Rights Reserved.

Countersigner & Witness: Elle Augusta El
All Rights Reserved.

Certified Mail number(s): 7018 1130 0000 5694 6654; 7018 1130 0000 5694 6630
Domestic Return Receipt(s): 9590 9402 4375 8190 1778 44; 9590 9402 4375 8190 1778 37



Exhibit A3

Part of the Computershare Group

SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO INFORM YOU OF THE STATUS OF THE MORTGAGE SECURED BY THE SUBJECT PROPERTY. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. IF YOU RECEIVED A DISCHARGE OF THE DEBT IN BANKRUPTCY, WE ARE AWARE THAT YOU HAVE NO PERSONAL OBLIGATION TO REPAY THE DEBT. WE RETAIN THE RIGHT TO ENFORCE THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY, IF ALLOWED BY LAW AND/OR CONTRACT. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

SUCCESSORS IN INTEREST - IF YOU ARE IN RECEIPT OF THIS COMMUNICATION PURSUANT TO YOUR STATUS AS A SUCCESSOR IN INTEREST TO THE SUBJECT PROPERTY, THIS NOTICE DOES NOT MAKE YOU LIABLE FOR THE MORTGAGE DEBT. UNLESS YOU ARE PERSONALLY LIABLE FOR OR HAVE ASSUMED THE MORTGAGE LOAN, YOU CANNOT BE REQUIRED TO USE YOUR ASSETS TO PAY THE MORTGAGE DEBT. THE LENDER HAS A SECURITY INTEREST IN THE PROPERTY AND A RIGHT TO FORECLOSE ON THE PROPERTY, WHEN PERMITTED BY LAW AND AUTHORIZED UNDER THE MORTGAGE LOAN CONTRACT.

Exhibit A4

# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)**

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 10, 2006 (Date) PROVIDENCE (City) Rhode Island (State)

44 CARR ST, PROVIDENCE, RI 02905
(Property Address)

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $221,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is New Century Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on April 1, 2006

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 03/01/2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 18400 Von Karman, Suite 1000, Irvine, CA 92612 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $1,699.30. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

1006419921

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family - Fannie Mae UNIFORM INSTRUMENT

-838N (0210) Form 3520 1/01

VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 4 Initials: SR

Exhibit A5

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of March, 2008, and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Five And Ninety-five Hundredth(s) percentage points ( 5.950 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.000 % or less than 8.500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One And One-half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

1006419921

Exhibit A 9

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated February 10, 2006. The Note states that Borrower owes Lender TWO HUNDRED TWENTY-ONE THOUSAND AND 00/100 Dollars (U.S. $221,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 03/01/2036

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider
[ ] Balloon Rider
[ ] VA Rider
[ ] Condominium Rider
[ ] Planned Unit Development Rider
[ ] Biweekly Payment Rider
[ ] Second Home Rider
[ ] 1-4 Family Rider
[X] Other(s) [specify]
Prepayment Rider
ARM Rider Addendum

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

Exhibit A 18

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Exhibit A 20

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing such Borrower's execution of the Note and this Security Instrument.

25. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

Exhibit A 23



8742 Lucent Blvd, Suite 300, Highlands Ranch CO 80129

001977

STEVEN J LATIMER
44 CARR ST
PROVIDENCE, RI 02905-1312

02/13/2017

RE:   Transfer of Loan Servicing
      Specialized Loan    1012162681
      44 CARR ST
      PROVIDENCE, RI 02905

## NOTICE OF SERVICING TRANSFER

The servicing of your Mortgage Loan has been transferred, effective 02/01/2017. This means that after this date, a new servicer, will be collecting your mortgage loan payments from you. No other terms of your Note and Mortgage will change.

Americas Servicing Company (ASC) is now collecting your payments. Americas Servicing Company (ASC) will stop accepting payments received from you after 1/31/2017.

Specialized Loan Servicing LLC ("SLS") will collect your payments going forward. SLS will start accepting payments received from you on 02/01/2017.

**Send all payments due on or after 02/01/2017 to Specialized Loan Servicing LLC at this address: P.O. Box 105219, Atlanta, GA 30348-5219.**

If you have any questions for either your present servicer, Americas Servicing Company (ASC) or your new servicer, SLS, about your Mortgage Loan or this transfer, please contact them using the information below:

| Prior Servicer | New Servicer |
|---|---|
| Americas Servicing Company (ASC) | Specialized Loan Servicing LLC |
| Customer Service Department | Customer Care Department |
| (800) 842-7654 | 1-800-315-4757 and SLS accepts calls from relay services on behalf of hearing impaired borrowers. |
| PO Box 10335 | 8742 Lucent Blvd., Suite 300 |
| Des Moines, IA 50306 | Highlands Ranch, CO 80129 |

**Important note about insurance:** If you have mortgage life or disability insurance or any other type of optional insurance, the transfer of servicing rights may affect your insurance in the following way: SLS does not currently offer life insurance or disability insurance. if you were previously enrolled in this service, it will no longer be part of your monthly payment. You should contact your provider to arrange for direct payment or cancellation of these services.

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed on you.

Sincerely,

Specialized Loan Servicing LLC

PLEASE SEE IMPORTANT NOTICES BELOW.

**IMPORTANT NOTICES:**

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

BANKRUPTCY NOTICE - IF YOU ARE A CUSTOMER IN BANKRUPTCY OR A CUSTOMER WHO HAS RECEIVED A BANKRUPTCY DISCHARGE OF THIS DEBT: PLEASE BE ADVISED THAT THIS NOTICE IS TO ADVISE YOU OF THE STATUS OF YOUR MORTGAGE LOAN. THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY TO ANY RECIPIENT HEREOF, WHO MIGHT HAVE RECEIVED A DISCHARGE OF SUCH DEBT IN ACCORDANCE WITH APPLICABLE BANKRUPTCY LAWS OR WHO MIGHT BE SUBJECT TO THE AUTOMATIC STAY OF SECTION 362 OF THE UNITED STATES BANKRUPTCY CODE. HOWEVER, IT MAY BE A NOTICE OF POSSIBLE ENFORCEMENT OF THE LIEN AGAINST THE COLLATERAL PROPERTY, WHICH HAS NOT BEEN DISCHARGED IN YOUR BANKRUPTCY. IF YOU HAVE QUESTIONS, PLEASE CONTACT US AT 1-800-306-6057.

**Monthly Automatic Payment Drafting** – Specialized Loan Servicing LLC is pleased to offer this service. Simply contact our Customer Service department at 1-800-315-4757. If you previously arranged with your prior servicer to have your monthly mortgage payment drafted from your bank account, that service was automatically discontinued when your loan was transferred to Specialized Loan Servicing LLC. If you would like to continue to have your monthly mortgage payment drafted from your bank account, you must enroll with Specialized Loan Servicing LLC in order to take advantage of this service for your future payments.

**End of Year Statements** – Every year, in January we will send you an accounting of your loan for the previous calendar year along with a statement of taxes and interest paid for income taxes purposes. Please be sure to keep us advised of any change in your mailing address.



Exhibit A 2&6

8742 Lucent Boulevard ▫ Suite 300 ▫ Highlands Ranch, CO 80129

1-800-315-4757
1-720-241-7218

**PURSUANT TO RESPA, A NOTICE OF ERROR OR REQUEST FOR INFORMATION REGARDING THE SERVICING OF THE MORTGAGE ACCOUNT (INCLUDING A QUALIFIED WRITTEN REQUEST) MUST BE SENT TO THIS ADDRESS:**

**Specialized Loan Servicing LLC**
**P.O. Box 630147**
**Littleton, CO 80163-0147**

**Please note, RESPA (12 U.S.C. Section 2605) provides you certain consumer rights. If you send a notice of error or request for information (including a qualified written request) to your loan servicer regarding the servicing of your loan, your servicer must provide you with a written acknowledgment within 5 days (excluding legal public holidays, Saturdays, and Sundays) of receipt of your request. Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. After receipt of a notice of error, your servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.**

**The notice of error or request for information must be written correspondence (other than notice on a payment coupon or other payment medium supplied by the servicer) that includes, or otherwise enables the servicer to identify, the name and account of the borrower, and includes a statement of the reasons the borrower believes the account is in error, if applicable, or that provides sufficient detail to the servicer regarding the information being sought by the borrower. Please note, a notice of error or request for information is not considered timely if the written correspondence is delivered to the servicer more than 1 year after either the date of transfer of servicing or the date the mortgage servicing account was discharged (either paid in full, or discharged through foreclosure or deed in lieu of foreclosure or short sale without full satisfaction of the underlying contractual obligation.)**

7018 1130 0000 5694 6654

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

LITTLETON, CO 80129

OFFICIAL USE

Certified Mail Fee $3.45

Extra Services & Fees (*check box, add fee as appropriate*)
- ☐ Return Receipt (hardcopy) $ $2.75
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $ $0.00

Postage $1.63

Total Postage and Fees $7.83

Postmark Here 0860 07 DEC 31 2018

12/31/2018

Sent To Beatrice Teller ID 4916

Street and Apt. No., or PO Box No. 5742 Lucent blvd Suite 300

City, State, ZIP+4® Highlands Ranch CO 80129

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

7018 1130 0000 5694 6630

U.S. Postal Service™
CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

LITTLETON, CO 80163

OFFICIAL USE

Certified Mail Fee $3.45

Extra Services & Fees (*check box, add fee as appropriate*)
- ☐ Return Receipt (hardcopy) $ $2.75
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $ $0.00

Postage $1.63

Total Postage and Fees $7.83

Postmark Here 0860 07 DEC 2018

12/31/2018

Sent To Abby Wells

Street and Apt. No., or PO Box No. PO Box 630147

City, State, ZIP+4® Littleton Co 80163-0147

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions